Next case is number 21-1695 Pyrotechnics Mgmt Inc v. XFX Pyrotechnics LLC in Pyrotechnics. Good morning. May it please the court. Lew Kreck on behalf of defendant appellant Pyrotechnics. I'd like to cede five minutes for rebuttal. Five minutes will be granted. Thank you. At issue in this case are purely functional numbers identical to what the court previously decided in South Co. Really what we've got here are numbers wrapped up in fancy dress. The alleged method of infringement here is a compatible product for displaying fireworks displays. What's at issue is an independently created product and compatibility only. Plaintiff claims protections for command codes. These codes are just sequences of numbers. In computer science, a protocol creates a basic structure for how electronic devices will communicate. Plaintiff's command codes are nothing more than protocols or sequences of numbers. And that's their identifying material. What they submitted to the copyright office. What is the idea underlying the protocol? Tell me that. The idea underlying the protocol is really just numbers that are necessary to shoot fireworks displays. The idea is. Give a direction and end up there with a result. Yes, your honor, I press a button, firework goes off. How does that become an idea? Well, it's really just the numbers that are necessary to make it function. So it's only an idea because the numbers are so reduced down to that function. Isn't the idea that I could control what's shot off by? By creating a code. I would agree with that statement. And then you gotta express your idea somehow, don't you? Yes. Thank you, your honor. So what they submit was created after the alleged infringement, and it's a description of how to create these codes. And that's like you said, the idea is this description of how to create them. What they claim is a date of publication is actually 1995. And what they've, they haven't pointed to, they haven't provided what was actually created in 1995, which was what was created in 95. There was had to be some source code and some object code, right? Yes, your honor. That would reside in the control panel. Exactly. Okay. They didn't copyright that. They did not, and they never produced it. That was the date, 95, that they released that product. It must have been source code. 37 CFR 202.20 requires a transcription of that source code, if that's what they want to protect. What they register is a description of how to create these codes. And that's the deposit copy, the seven pages. Correct, your honor. It's textual explanation. It's a description of four different ways to do this. And as I understand it, there are 4 billion potential combinations that can occur through the 96 bits, 12 bytes, 8 bits per byte. Am I getting that right? That's correct, your honor. And that was, that was their author's testimony that you could use what they've, what they've submitted to the copyright office to protect billions of variants of this code. So the idea in turn protects all these separate variants. And that's exactly why they cannot provide a transcription of what was published in 1995. But I'm sorry, they can't produce a, they can't just rely on a description. They have to produce a transcription of the actual code. And that content, the lower court relies only on the testimony, oh, that this seven page document that we just created is identical to what we created in 95. If you look to Saylor versus Lucasfilm, none of the statements in the certificate of registration can be of any use until Saylor proves that the reconstruction, in this case, the deposit material, are the same as the originals. So until they produce those originals, they can't just rely on something they've created that says it ticks out these command codes. It's pretty clear from the record that they created this deposit copy after your client was making money doing essentially the same thing they were doing, right? Your client, your client reverse engineered their protocol, right? Or their messaging. Correct, your honor. He reverse engineered these. And do we know how that happened? As I understand it, there's a digital, there's a digital message that comes out of the control panel, and then that's converted to an analog message, right, that goes to the field module. That's correct. Is that right? Yes. And your client figured out how to do that the exact same way? Is that what happened? Do we know exactly what your client did? We do. He reverse engineered the electronic outputs. How? When you say the electronic outputs, are you referring to the analog message or the digital message or both? I believe he looked at the analog messages to determine what these sequences of numbers were so that he could fire off the same fireworks and create a compatible product. Okay, so you can see that there's sort of copying or as I understand it, correct me if I'm wrong, but your argument is that it's fair game to do that. We copied something that was not subject to an intellectual property right because the copyright is, was invalid ab initio, because they couldn't get a valid copyright on the seven pages. Exactly. Is that the crux of your argument? Exactly, your honor. If you look to what the lower court relies on, they pick out three isolated sequences of numbers and infer, oh, well, there must be copying. These sequences of numbers are identical. Well, the sequences of numbers can't be protected. And if you look to the South Code decision, the court said at the outset, we must determine exactly what work South Code claims is entitled to protection. There are three possibilities, the numbering system, the actual part numbers, and both the system and the numbers. You've got three separate potential copyrights here. The computer program published in 95, the deposit material they create after the alleged infringement in the command code itself, which are just sequences of numbers. They've only pointed to copying of these sequences of numbers. There's been no copying of the text that's registered, nor has there been any copying of the actual computer program. Again, they're trying to prove copying by pointing to isolated numbers. In South Code, a list of numbers were copied. The lower court here also found verbatim copying, even though we're only talking about those similar numbers. Here, they've even gone further, is their command codes in this deposit material are marked with X's, signifying that the machine doesn't care what's marked in this field. They're attempting to, as the court... Well, apparently, the don't cares are actually zeros and ones, correct? Correct, Your Honor. Zeros or ones. Correct, but it allows them to point... Your point is it doesn't matter. That's why they said don't care. Right, but it allows them to then claim protection of variants of the code that aren't even spelled out necessarily in the material itself. So if some of this were copyrightable, you'd have to excise out the don't care parts because they're immaterial. They would be getting a copyright on the parts that actually matter. They have to define what their actual expression is. If they're trying to protect something, it needs to be said what it is. It can't be a basic sentence structure or a basic format like they've done here. In South Code, they actually had a better argument because they protected lists of numbers. Here, they're trying to protect just a code for creating numbers and then saying, oh, you copied my numbers, even though I've only given a rudimentary code as to how to create them. So copyright on a work of mathematical science can't give an author exclusive rights to the methods or operation he propounds. And if you look to Baker versus Seldin, it's a great analogy. There, a bookkeeping system was described in a document, and what the court found is the plaintiff can't stop others from practicing the system. It's only the description of the system is protected. The use of the art is a totally different thing from the publication of a book explaining it. Here, the command codes are described in a document, but the plaintiff can't actually stop others from using those codes. They can only stop them from using their textual descriptions of how they're created. Are you arguing there's no originality in the code, in the protocol or the command code? That's correct. There's originality in the descriptions, but there's no allegations that my client copied those descriptions. What about the FSK scheme, though? That seemed to be pretty ingenious, right? That they use this 184 KHZ signal to represent a one and 132 KHZ signal to represent a zero. That's something that was ingenious by your adversary, right? And did your client copy that as well? No. When you look to what the lower court relies on, it's really just these basic strings of numbers. They're attached to both arbitrary... The strings of numbers can only go from the control panel to the field module if the frequency is protected, as I understand it, right? The point of creating this scheme was to make sure that the message could get conveyed from point A to point B without interference. Isn't that right? Right. Exactly, Your Honor, which is an external constraint. So when you look to external constraints for creating a system, that's not creativity. That's a constraint that's necessary for the system, just as what was described in Southco. If you try and change it to add creativity, it won't work. It won't fire. But the way to guard against the external constraint was to come up with the FSK scheme, right? FSK is just a standard protocol for communication. If the court's asking... And did your client do the same thing or something different or... He did the same thing. That was the standard protocol. All right, you've reserved five minutes, so I think we understand your argument. Let's hear from Ms. Hill, okay? Thank you, Your Honor. Good morning, Your Honors. My name is Lucy Hill, and I represent Appalachia Pyrotechnics Management, Inc. I'd just like to clear up a few factual misstatements, which I believe were made by a publican counsel. This case concerns Pyrotechnics' copyrighted command-controlled protocol, which is not a computer program. It is akin to an application program interface, in that it is a code or program that allows two other programs to communicate with each other. All right, let me just stop you there, because I'm not sure I understand how this is a code, or you said it's a computer program, or like... It's not a computer program. It's not a computer program. No, it's a machine-readable electronic expression. Okay, so... You said it was an application program, right? Yes, correct. There's a difference. Yeah, well, it's akin... Is there a difference between an application program and a computer program? Yes, yes. APIs are treated differently than computer programs under the popular law. Let's just make sure... I want to make sure that I understand exactly what happened here. So, you have a control panel that you own? Correct. It has source code? Correct. Did you get copyright on the source code? We got copyright on the command-controlled... Did you get a copyright on the source code that resides in your control panel? Yes, the copyrighted command-controlled protocol resides in the panel, now done by the lower court. Wait a minute. I think we're talking past each other. Okay. Source code... You have a source code, right? Correct. It resides in the control panel? Correct. Did you get a copyright on the source code? No. Okay. Object code resides in the control panel. Did you get a copyright on the object code? No, that is not what we're thinking here. But your source code and your object code then convey a message, a digital message, that gets converted to an analog message that's transmitted from the control panel to the field module to set off the fireworks, correct? Correct. Okay. As I understand it, the deposit copy, the seven pages, describes how that digital message is converted to an analog message and transmitted to the field module. Is that right? It's not merely just a description. It contains... Not nearly what? It's not merely just a description of the codes. It contains the exact 12-byte alphanumeric codes that are transmitted and that we are alleging were copied here. And so it contains those. Those codes are the basic command format, enable firepower, cue test, and fire cue command. Are those the only four things that happen between the control panel and the field module? Well, as the testimony before the lower court reflects, these four basic commands are capable of producing four billion variants of code. However, we did not register all four billion variants, and we are not claiming that all of those were what was copied. Instead, what we are saying here is that these four basic command codes, which were created in 1993 and published in hardware in 1995... Wait, wait. Hold on. Published in the hardware. Published in what hardware? In the field module. So you're saying that these 12-bytes reside in the field module? Correct. What's the evidence in the record for that? There is testimony from my client regarding that. Where in the record and what did he say? Because as I understand it, these 12-bytes can't physically reside in the field module. These 12-bytes are a description of how the message gets transmitted from the control panel to the field module. And you're saying that these 12-bytes reside physically in the field module? Right. The lower court made a factual finding. No, no. Forget about the court, what the court said, because I found all kinds of things. I have questions about what the court found. Where in the record is there evidence, testimony, or documentary evidence to support that these 12-bytes physically reside in the field module? In my notes, Your Honor, I have that at Appendix 22 and 23. Yes, testimony from Daniel Barker, the owner of Pyrotechnics. And what did Barker say? I don't have his precise words in front of me here, but he testified that the command code is transmitted on wires to the field module and occurs in the microprocessor of Pyrotechnics' controller. All right, just say that, what you just said, a lot slower. Okay, sure. I am not an engineer, so say that again slowly, please. So his testimony was that Pyrotechnics' command code is transmitted on wires to the field module. Okay, stop for a second. Command code is transmitted on wires. That's what we were talking about before, where it goes from the control panel to the field module, correct? Correct. Okay, then? And it also occurs in the microprocessor of the controller. It also what? Occurs? Occurs. In the? Microprocessor of the controller, which is another term for the control panel. Okay. That's in the control. That's in the front end. Correct. Okay, but you said it resided in the field module. Oh, I apologize, Your Honor. That was my misstatement. Resides in the control panel. Okay, so let's go back, reboot then. What resides in the control panel? You're saying that these 12 bytes reside in the control panel? Correct. That is my understanding from the testimony of my client. Okay, and they've resided in the control panel since 1994, 95? That's correct. That's when these products were first created. To address Your Honor's question. I'm having trouble understanding how they can reside in the hardware at all when they're not code. It's not source code. It's not object code. Those are the things that reside in hardware, right? Right. But this is neither source code nor object code. This is a protocol that describes how to send a message from the control panel to the field module. It explains how that method. Really, you never got a patent, right? No. You may have been able to get a method patent on this, right? Right. But we are not saying that we have a copyright over the method. We're saying we have a copyright on these exact, precise 12-byte alphanumeric codes that work in our deposit copy verbatim, and that is what was copied by the defendant in this case. Now, I'll confess I'm a bit ignorant on everything you're talking about. But I understand the concept of reverse engineering. They work their way back. Yeah. So how in working their way back is what they concluded was the same command code and cringe upon what you had previously done? Haven't they done the same thing through their own work? No, Your Honor. Haven't they done this themselves as opposed to copying what you've done? No. No. Based on the testimony from Mr. Antoci, the owner of FireTech, as well as the report of our expert, Robert Capurro, all they did was take our command codes and put them directly into their product to create an interoperable product. They did not make any attempt to create their own code. Here, you know... When they say the reverse engineered it, they did it to a point that they needed your command code to finish it. Right. Correct. There's no way to make an interoperable product with ours unless it incorporates our code, which uses, you know, this is precise 12-byte format. It uses these exact precise frequencies for transmitting the code and... I assume you'd agree with what I said to Mr. Crook, that that was ingenious for your client to come up with the frequency shifting implementation here, correct? Correct. But that's a method of operation, isn't it? No, because that is part of what is required to transmit these codes and make the products work together. But are you saying that that would only make... Would only work with these bytes, with these protocols? Couldn't that FSK work from innumerable other communication protocols? I'm not sure if, you know, if other communication protocols could be be compatible with each other. They have to use our exact alphanumeric code as well as the frequencies. Okay, and I think you said earlier you did not... You're not saying you have a copyright on all 4 billion messages that can be generated in the format, but does that mean that you only have a copyright on the 4 messages that are indicated in the deposit copy? That is correct. And those are the messages that we have alleged are being copied here. So it's just enable firepower, the queue test, the response from the firing module, and the fire queue. You have copyrights just on those 4 things? That's correct. And why would it be copyrightable to include all of the bytes that are in the GoCare category? Wouldn't you have to excise those out? No, because that's relevant to the structure, sequence, and organization of the code. You know, it has to be in that exact order. There have to be zeros in those fields of the code. Correct. In X, there was testimony before the lower court that an X or zero is the same thing for purposes of the code. And if there was... I mean, your first two bytes are standard, and your last byte, the CRC, is standard. Then you've got some unique things in the middle, and then you have a bunch of don't cares in the middle. It's almost like saying you're going to get a copyright on a novel where you're going to have a stock introduction, a stock description of the characters. Then you're going to have some original material in the middle. Then you're going to have chapter upon chapter, several chapters that are irrelevant, that nobody cares about. And then at the end, you're going to have a stock conclusion. That seems to me to be a literary analogy to what I'm looking at here in your appendix. What am I missing? So, you know, as the Supreme Court has stated, the originality, the creativity requirement for originality is an extremely low bar. And the Supreme Court has also noted for these type of programs, you know, there is a lot to them that is functional. But all that is required is just a minimal degree of creativity. Now, there was testimony before the lower court... But don't cares, I guess I'm challenging you to suggest that don't care isn't creative at all. Don't care is telling us it's irrelevant. I would disagree with that characterization, Your Honor. I think maybe the description of don't care by the engineers is perhaps a little misleading because that does have to be a zero in the structure, sequence, and organization of the code for the code to work. It can't just be empty or blank. OK, that's a way of saying it has to be a zero or it could be a one, too. I believe the axes have to be zeros. They have to be zeros. Based on the testimony below. You already answered Judge Hardiman's question on why this protocol isn't a method of operation. But FARTEC argues that the sole purpose of your protocol is to communicate with your field modules and not the remote admission of the fireworks. How do you answer that? I would disagree with that. I mean, the whole purpose of using field modules is to allow for the remote ignition of fireworks. There'd be that is part of the purpose of the protocol is to communicate between these devices, which allows for the remote ignition of fireworks. Your fire one devices or generally devices communicate with your fire one devices period narrow. That's it. Correct. Yes, the command control protocol at issue here just communicates between the fire one devices. Other pyrotechnics companies have developed other codes where they can communicate between a control panel and a field module, which shows that our engineers use creativity in developing this code because it is different from the codes used by other companies to do the same thing. You take the narrow, narrow purpose approach. Correct. Your Honor. But tell us what what the other side did here. Remind me of what hardware they were using. So, what what they developed is that a field module which could be controlled by a pyrotechnics or excuse me, they developed a control panel that could control pyrotechnics field modules. They're buying your field. They were buying your field modules and using them, but not buying your control panel. Correct. But their control panel doesn't have your source code or your object code. There's no allegation of that. No evidence of that in the record. That would be impossible to copy that because you haven't published that, right? Correct. It copied the command control protocols which are contained in our deposit copy. But they they figured that out before you ever put your deposit copy into the copyright office. The reason you put the deposit copy in the copyright office was because you knew that they were doing essentially the same thing that you were doing, your client was doing, right? That's correct. You know, the the registration of the copyright only became necessary when my client sought to file this litigation. But the copyright attached when it was first published in 1995. I'm still I'm still struggling with what was published in 1995. These this seven page deposit copy was not published in 1995. Correct. The codes contained in the deposit copy were published. But I don't I'm still not persuaded. Where were they published? They were published in the hardware. That was it can't. I'm struggling with how they maybe maybe Mr. Kirk can help me with that. But I don't understand that they can they can live in the hardware the way source code lives in hardware and object code lives in hardware. So you're saying that these 12 bytes reside in the control panel? Correct. That was the testimony below before the lower court. At the time of you created this protocol, were there alternative alternate means of communicating between fire ones, panels and the field modules? Is anything like that exist? Between the fire one product specifically? Let's say an alternative means of communication. Uh, yes, they they could have. And as the testimony before the lower court reflects, other companies have created products that communicate with each other that do not use pyrotechnics, alphanumeric codes, communicate with their blast off material. In other words, correct. Correct. Thank you. Thank you. Thank you. Ms. Hill, Mr. Kirk, rebuttal. Very briefly. Can you can you please start with with what is vexing me that what we just heard is that there's evidence in the record to support the notion that the deposit copy resides in the hardware in the control panel. I which what's your response to that? I wish I could, Your Honor. What was published in 95 is source code. What they then create a few years ago is this seven page document. There's no equivalency. There's no fixation of these of these signals that are transmitted just as well. But what I'm looking at here in Appendix 142, I guess it starts at Appendix. The deposit copy starts at 137. That's a description. It's not the actual message, right? It's a description of how to create the message. Correct, Your Honor. So their argument is that that description of creating the message existed back in 95. And that seems obvious because if they were in the fireworks business and doing this in 1995, presumably this is the way they were doing it. So I don't question that this existed back in 95. That makes sense. And I think there's record support for that. What I'm asking is, is it copywritable material that resides in the control panel hardware the same way that copywritable source code and copywritable object code do reside in the control? It is not. It's only source code that exists in that device in 95. So this recipe itself does not. They're trying to come up with a recipe after the fact to protect what the source code did. Because they chose not to register. No, but I don't understand that argument because this recipe had to exist, unless they were setting off fireworks in a different way possible in 95. This recipe did exist in 95. But they've never presented what there was in 1995, you know, the best copy, the original version of it that existed. Does that matter? I believe it... How does that matter? I believe it does matter because I believe they're trying to protect their source code with this recipe they came up with after the fact, when all they really want to protect are these isolated strings of numbers. And when it comes down to it, copyright protection is available for selection, coordination, and arrangement of specific content, such as a compilation of artwork, a compilation of text, provided that the content is arranged in a sufficiently creative manner. However, this is from the U.S. Compendium. However, the claim would be limited to the selection, coordination, and or arrangement of that specific content. It does not apply to the format and layout itself. The title of their work is Abridged Command Code Format. They are trying to use a format to protect something that's happening as a result of source code from 1995. It's a false equivalency and it does not protect what they claim it does. And you concede they could have protected the source code. There's no doubt source code and object code are copyrightable, correct? Of course, but that's not what they did here. They didn't choose to copyright those. They're trying to backdoor patents. They're trying to protect numbers. And when you say they're trying to backdoor a patent, you're saying that this is a method of doing something. They should have gotten a method patent on this. Absolutely, Your Honor. I have nothing further. I rest on my briefs unless the court has any questions. Let me just ask you about the Whalen test. Tell us a little bit about its application or not in this case. Of course, I don't think you can use Whalen here because we're not comparing two computer programs. What we're comparing are identical sets of numbers. It's clear from the record that they registered a seven-page document created after infringement that explains how to create these numbers. Whalen is dealing with code and the outputs of code. Here, you're just dealing with numbers. This is about communications. This is not just about firing fireworks. There's no equivalency because there's no opportunity for interoperability otherwise. Section 1201F allows reverse engineering where the only elements used are those required for interoperability. All right. Thank you, Mr. Crook. Thank you, Ms. Hill. This is, needless to say, a very challenging and interesting case. It was so for the district court. It is for us and taken under advisement. Well argued. Yes. Thank you.